May it please the Court, my name is Carrie Powell and I represent Sierra Club. Under Clean Air Act Title V, the Hunter Power Plant was required to obtain an operating permit that assures its compliance with all applicable requirements under the Act. Sierra Club petitioned EPA to object to the Hunter Plant's permit because it omits critical major new source review requirements including the requirement to control harmful air pollution using best available controls. EPA admits that a source cannot avoid major new source review simply by obtaining a minor source permit. Yet in denying Sierra Club's petition, EPA announced for the first time that for Title V purposes even if Sierra Club demonstrated that major new source review applies, Utah's prior issuance of a minor source permit prevents major new source review from being an applicable requirement for purposes of the plant's Title V permit. Council, please excuse me. I've got to have a question right here to make sure that I'm following along with what all the council's arguments are, but as I reading through this came to the conclusion that what you're doing is that you're really objecting to the Title V issuance, the one that they're just now approved based upon an erroneous issue of a Title I in 1997? Am I correct in figuring that out so far? You are, your honor. So under the Clean Air Act, if a source makes a modification that triggers applicability of major new source review primarily based on the amount by which it will increase emissions, then it has to do a number of things including installing best available controls. But what's the basis, and I really need from both council, what's the basis of then going back to correct something that's been in existence for all of those years and now saying that well you're now issued a new permit that erroneously was issued in 1997? Your honor, the reason. It sounds to me like trying to put the toothpaste back in the tube. Well it's not, your honor, because an issue here is that because the source did not undergo major new source review at that time, it continues to this day to operate without using best available controls, releasing pollution that harms public health and impairs Utah's scenic vistas. But I think to be more responsive to the question, you have to tell us why didn't the Sierra Club comment or seek judicial review when it had notice from the state of Utah that it was considering this pre-construction Title I permit? Your honor, I don't know why Sierra Club didn't participate at that time. They might not have seen the public notice that would have been in the local newspaper at the time. But the point is that EPA admits, as it must because federal courts have held, that issuance of a minor source permit does not eliminate the possibility that major new source review applies. When was it that Sierra Club made the first request or Your honor, I believe Sierra Club became aware of the problem in the early 2000s, but unfortunately Utah, though it was supposed to renew the Hunter Plant's Title V permit within five years of issuance, they actually waited 17 years to renew that. They should have done it in what, 2003? Correct. And is that about the time? That's about the right time that they should have, and instead they did so in 2016 after being sued by EPA. One other, excuse me, sued by Sierra Club. One other fact that's important to me, and it's only if it's in the record, is that we have this general statement that construction was to take place from 1977, excuse me, 1997 to 1999, and the Title I permit was issued in 1998, correct? Is that correct? Your honor, yes, there was a minor source permit issued. When did the, when was construction completed, and is that in the record? Your honor, I'm not sure when construction was completed, but again, the fundamental issue here is that a minor source permit, no matter, you know, under EPA's interpretation, a minor source permit always eliminates the possibility that major new source review could be an applicable requirement for Title V, and EPA's rationale in denying Sierra Club's petition did not turn on the amount of time elapsed. In fact, after issuing the Hunter order, they went on to apply this exact same legal interpretation to reject a petition raising new source review issues that were actually determined at the same time as the Title V permit was issued. I understand, the drift of my questions is, isn't it equally important to have an opportunity to chime in immediately after construction as it is in the pre-construction permit? So, yes, it is, and Title V provides very important procedural opportunities for both EPA and the public that are simply not available when a source issues, when a state issues a minor source permit. EPA had no opportunity to review and object to the state's issuance of that minor source permit. Likewise, the public had no opportunity to petition EPA to object, and they had no opportunity for federal court review, and this fundamentally goes to why Congress enacted Title V in the first place. Title V was enacted in 1990. That was 20 years after the Clean Air Act was first enacted. EPA's enforcement authorities had been in place all of that time. There are citizen-suit opportunities prior to that, but Congress concluded that the enforcement mechanisms were not enough, that something else needed to be done. Before we get that deep into it, I've got two more basic questions that I've a Title V permit issued also in 1998, wasn't there? Yes, Your Honor. And there was no objection made by anyone at that time? There was not, Your Honor, but Title V creates the same opportunities each time a permit is renewed for a public input EPA objection and including affected state input, because the reason Congress enacted Title V. I understand that, but your objection as to what they did wrong goes all the way back to 1997. It does. You had the opportunity in 1997, you had opportunity in 1998 to raise these same concerns at that point too, right? Whether you knew it or not, you had, there was the opportunity to do that. Yes, Your Honor, and the critical issue here is that we have a requirement that continues to apply, and it applies directly. Yes. Do you agree that our standard of review then is going to be arbitrary and capricious? Well, there's several different reviews. What is my standard of review that I'm going to apply in this case? There is arbitrary and capricious review of this type of case, except for there's different standards that apply to agency interpretations of statutes and regulations. So the background standard is always arbitrary and capricious review under Clean Air Act 307 cases. Now run that by me again. Excuse me, Your Honor. Yes, I agree. There's arbitrary and capricious review, except when you're looking at an agency's interpretation of the statute. There's, so EPA argues that there should be Chevron deference, and we argue that in this type of case there absolutely should not be Chevron deference. It should only be to the extent that the agency's interpretation has the power to persuade. I notice we've brought in both Skidmore and Auer and all those other cases. Yes, Your Honor. Okay, thank you, Counselor. Make sure I have the facts correct. There was the initial Title I permit in 1998, but construction was not completed pursuant to the Title I permit until sometime after the Title V in 1998. I believe that's correct, Your Honor. I don't have the exact date for when construction was. But the record, it's in the record? Yes. Okay. So a couple of issues. One is it's important to It is EPA's rationale for their action that is before the court, and it presents, EPA did not argue that there was an issue of whether this could have been raised in the first Title V permit or in the renewal Title V permit. EPA has adopted a theory that says it does not matter, that never under Title V could petitioner raise this type of issue, that even if the minor source permit was submitted unanimously, that it would bar EPA from objecting to the permit based on major source review. Hasn't the requirements under Title V in 20-some-odd years changed somewhat? The Title V has not been amended since Congress enacted it in 1990, and there have only been very minor changes to the regulations. One thing I did not understand was the concept of a permit shield. Is that pertinent to this, to your argument? It is, Your Honor, because... Could you explain to me what it is and why it's pertinent? So there's two kinds of permit shields. One type of shield is sort of a general shield that can go in and say whatever is addressed by the permit, if there's a requirement in the permit itself, then compliance with that permit condition will amount to compliance with the requirement. But the permit shield that's really, really important here is that there's also an opportunity for a source to obtain certainty regarding whether a requirement applies by asking for a shield declaring that they are not subject to a requirement. And EPA admits that there could have been that kind of shield in this permit, but the Hunter plant did not request it. Is the permit shield something that the source asks for, or that EPA suggests, or the state of Utah would suggest? Ultimately, the state of Utah has the primary responsibility for administering the program, so Utah would have discretion as to whether to put that type of a shield into the permit. And can you put a permit shield in anytime, 20 years later? Sure. And in the preamble to the Part 70 regulations, EPA described the permit shield as something that could give the source certainty until the next permit renewal. And is there a notice, an opportunity to be heard by people who would oppose the state were to decide to put that kind of shield into the permit for major new source review? That absolutely would automatically be part of the proceeding, and EPA would not dispute that this issue would be live. The only thing that's happening here is EPA is saying that it does not have to consider a petitioner's demonstration that major new source review applies. And that is where we are asking this court to say that no, under the clear language of the EPA, must consider that demonstration because major new source review can apply regardless of that minor source permit proceeding. And even the House report even declares, consistent with the statutory language, that there should not be matters applicable to the source under the act that are not addressed in the permit. Doesn't the availability on request of a permit shield suggest both that the EPA's construction is wrong and that your interpretation of 40 CFR 70.2 is wrong? Because if a source like Pacific Ore could get a permit shield insulating itself from further scrutiny as far as compliance with the Clean Air Act or Utah's SIP on request, doesn't that suggest that the whatever conditions and parameters that were put on that source in 1997 and then in 1998 are going to be operative? Otherwise, nobody would ever get a permit shield. No, no, Your Honor, because as we've discussed, the issuance of that minor source permit does not relieve the source of possible application of major new source review. EPA admits in this challenged order that even if a source has that kind of permit, it can bring a major new source review enforcement action against that source. And likewise, EPA's own new source review regulations make it clear that you can become subject if it turns out that, in fact, major new source review applies. The regulations direct that some sources need to keep records for as long as 10 years to document that even though they were initially classified as minor, they actually are major and they should have undergone major new source review. And that's what this is about. Title V is not punitive. It just ensures that if it can be shown and hear a petitioner's demonstration on the four corners of their petition that major new source review applies. That's where we are here. If they can show that, then EPA must consider that demonstration and they must object if the permit is not making sure that the source does everything it's supposed to do to reduce air pollution. We understand exactly where you're going, but Judge Bachrach's question used the expression permit shield. Yes. Can a source get a permit shield for minor source that would prohibit anybody in the future in a Title V from saying, no, they made a mistake, it's really a major source. Can you get a permit shield for that? They could apply. I think maybe the difference here is that if they don't apply for that permit shield and major new source review is not included in the permit, then they are at risk. I understand, but just the hypothetical, if they get a permit shield for minor source, they're home free, right? They are until the renewal that should happen every five years. You mean another five years goes by after the permit shield and it doesn't apply to an objection on a Title V permit? Obviously, it gets exceedingly less likely that anyone would be able to demonstrate that major new source review applies, but that burden is on the petitioner. So, yes, five years later. That's the point of this, is every five years there needs to be a check for everybody to weigh in and make sure that one of these, the largest sources that are impacting air quality are actually doing everything that they're required to do. It's not, they don't get a permanent free pass. So a permit shield only has a shelf life of five years maximum, right? Well, if the source applies for a renewal to their permit on time, then they get to keep that permit and those permit terms until they actually get another permit. So that's why the fact that it took Utah 17 years to renew the permit was an issue. But, yes, if the state were to do what it was supposed to do and renew that permit every five years, then that's a check. And that was the way Congress decided to balance this program, that it is that important that major sources of air pollution control requirements, that, yes, there is uncertainty, there's inherent uncertainty whenever a source constructs without undergoing major new source review. They could be subject to enforcement, they could have the state or EPA decide that the decision was was made incorrectly, or they could have a situation where somebody demonstrates in the Title V permit process that major new source review applies. But that is the, that's the mechanism that Congress set up. But when the permit process starts, there's an application. Does the, did the application in this case say that we're applying for minor source? For the Title V permit? No, for the Title I permit. But originally, yes, they applied for approval to construct under the separate minor source permit program. All right, and there's discretion with the state of Utah to say, oh, contraire, it's not minor, this is major, so we're going to do a major source review. You can do that, right? Yes. In fact, it's their obligation if that, if that's correct. Correct. Okay, I see my time has elapsed, so thank you, Your Honors. May it please the Court, my name is David Kaplan, attorney with the Department of Justice, representing EPA in this matter. Also at council table is Mr. Rawlson at the end with Pacificorps, Mr. Stevens with the state. I intend to reserve some time for Pacificorps to speak as well. The state is also available to respond to any questions you might have. Your Honor, several different types of requirements are imposed on a source like the Hunter plant here over the course of its lifetime. The Title V, Title I permit program is one source, and it's the result of that permit program, the permit determination that applies to the source. In addition to any number of other federal regulatory requirements, in addition to provisions in the SIP that don't operate through a permit program, the role of Title V is only to compile those pre-established requirements into one place. How do you reconcile, on our Kaiser issue, how do you reconcile Title I and 70.2 that says that any standard, not an applicable standard, defining applicable requirement, any standard or other requirement provided for in the applicable implementation plan, which of course is Utah SIP, approved or promulgated by EPA through rulemaking under Title I of the requirements of the Act. Any requirement under Utah SIP, which includes, under Utah SIP, a requirement to obtain a major NSR permit if the emissions exceed a particular threshold for a given chemical. No, Your Honor. First off, you have to read all the elements, the definitions of applicable requirement context. It's the second prong that specifically applies to this particular circumstance where a permit decision, a pre-construction permit decision has been made by the state and the outcome of that permit decision is what applies. That's the specific. All right. That's and. There's twelve requirements. So let me return back to your question. So let me return back to your question, Your Honor. The fact is that what is required in the SIP for pre-construction review, this is under Section 7410AC2, is that the state have a pre-construction permit program. And it's a requirement for a pre-construction permit program. And it's the result of that pre-construction permit program, the permit proceeding that defines the content of what the SIP requires for purposes of Title V. And so that's why your argument is that two is the overarching definition, right? There is a catch-all in one, but then EPA went and identified each of the specific contexts. The one context we have here is captured specifically right on point by Item 2. Item 1 is a catch-all and it's not a vehicle to go around and second guess the permit decision made in 1997. It talks about what the SIP requires. It's general language. The SIP in this context requires a state to have a pre-construction permit program. And here the state has a pre-construction permit program. It's the outcome of that permit program that defines what attaches to this facility. And that attached in 1997. All right, so what does the word all mean to you? Because the preceding paragraph says applicable requirement means all of the following, which has 12 subparts including the conjunction and. So I am giving you our understanding of what Item 1 means in this context. And Item 1 in this context means that you look at what the SIP is. Sometimes SIPs might have general free-floating requirements that don't have a permit program attached to it. And in Title V, EPA may need to look at, say, well, how does that apply to a facility? But in the context where you have a SIP that says implement a pre-construction permit program, then you have to look at it in to the program's outcome. And that is the state permit decision made in 1997. That's what's compiled into the permit. Your Honor, I'd like to stress that the state here has a pre-construction permit program. One program that governs everything. And if you look at the record, what the state did here is it looked at the application and it assessed should major or should minor requirements attach. This is at page 16 in our brief where we have a block quote from the permit proceedings. And it looked at that and it made a determination that major requirements do not attach. In fact, it levied a new limit on Pacific Corps back in 1997 to ensure that a threshold wasn't exceeded. And so we've got a substantive permit decision by the state that looked at should it be a minor act or just the minor requirements. And the state on the merits concluded, no, it's only minor. And so throughout her discussions today, Ms. Powell continued to refer to, oh, a minor permit can't preclude a major permit. Here, Your Honor, there's a pre-construction permit program that the state operates. And the state determined that major requirements do not attach. That's in the statute. How that helps you on your interpretation either on the Kaiser or the Chevrolet? Well, going back to under Kaiser, Your Honor, we believe that the agency interpretation is reasonable and should be upheld regardless of whether you apply our deference or not. But we do believe that if you were to look at the matter, Kaiser should attach. I mean, deference under Kaiser should attach. And the reason for that, Your Honor, is that the interpretation here is the authoritative view of the agency. This is a context in which statute requires that the administrator make the determination and the administrator expressly. And it says that the administrator can't delegate. This indicates that we're going to get the agency's definitive interpretation. And that's what we have here. And it should be given controlling weight. Moreover, there's no unfair surprise, the kind of thing that was concerned by the court in Kaiser. There's no unfair surprise that can result from a change interpretation because there's been no equitable reliance on the past determination. It's not as though Sierra Club... But wait a minute. At the time the pre-construction Title I permit was the opposite of what it is now. So Pacific Corp had no assurances because according to that interpretation, it could be challenged in subsequent Title V matters. Your Honor, the agency's original interpretation in 1992, I think was very clear. It's in the preamble of the regulations that were public in 1992. Okay. And that's where you talk about second-guessing. Yes. And that's where it's very clear, we believe, on the face of the preamble. Okay. Give me the name of a case that precedes Hunter where you applied that interpretation. Your Honor, what I can do... What you say is the original one from this verbiage in the preamble. I could do something even better, Your Honor. I can point to a document in the record. In a preceding case? It's not a preceding case. It's a case from 1999 where the agency says it's not our policy to use Title V to look back and second-guess. Is that in your brief? It's in the joint appendix, Your Honor, at 147 and 149. The reason I raise this is that this is not a circumstance in which there is a dramatic 180 shift from a consistent prior practice. The agency has at times used Title V in certain circumstances to look back, and it changes interpretation in the Hunter order. For sure there's been a change. Are there any cases where they actually applied that 1999... I don't know what to call it. This record wasn't designed to bring all the cases together, so I don't know the answer to your question, Your Honor. Well, it is saying that this policy was the original, the new policy in the Hunter order is not really new because it was the original one sourced from this reference of second-guessing in the preamble, and now you tell me there's this opinion. What I'm asking you, is there an adjudication, a case, an adjudication to provide the Hunter order approach? I'm not aware of it, Your Honor, but I'm not saying there isn't one. Wouldn't you expect, I mean, I would expect if there is, that you would have told us about it. Well, there are lots and lots of Title V permit proceedings before the agency, and this record wasn't accumulating all them together, so I can't say one way or the other, but the agency's interpretation doesn't depend on that, Your Honor. Whether or not you apply our deference, Kaiser under Kaiser, whether or not you even apply Chevron or not, the agency's interpretation here is unreasonable because if you look at the purpose of Title V, it's not to open up a state permit decision that was made more than 20 years ago. Because they would have reliance interests? Because, because Pacific or presumably... Yes, Your Honor, they, well... And yet, the administrator in this decision says in 2020 or 2025 or presumably in 2050, whatever the EPA or Utah's SIPP determination was in 1998 or in 2016 will not preclude the EPA from ever enforcing the Clean Air Act requirements or the Utah SIPP requirements against Pacific Corp. That's in the very text of the Hunter order that you're defending. Right, Your Honor, so the agency was trying to come up with a reasonable reinterpretation, and one element that's reasonable is how do you do, how do you do oversight of Title I permit decisions? The best way is to have the public participate before the state through notice and comment and challenge in state court the determination when that determination is made. That's the proper recourse. But EPA also noted that there are still opportunities for judicial review in force, I'm sorry, for enforcement in appropriate circumstances. Those are curtailed, and so there's not a huge disruption of expectations. And what's more, Your Honor, if an enforcement action is brought in appropriate circumstance, and I believe here because of time bars it might be limited to just injunctive relief, it's before a neutral arbiter where all the facts can be brought to bear, where Pacific Corp can participate rather than using Title V as a systematic mechanism to reopen and revalidate. So the argument is that the EPA's interpretation is going to disturb Pacific Corp's reliance interests, Sierra Club's argument opening itself up to Pacific Corp's renewal of a Title V permit is going to disturb the reliance interests of Pacific Corp. So that's given on either scenario, but your argument is that Congress, in its infinite wisdom, would have said, even though it's not in the EPA Hunter Order, that the difference is that our process is going to be fairer because it's going to open the process up in the renewal process to public participation and we're going to have greater procedural safeguards for Pacific Corp. Is that your argument? It's a factor that's relevant to the reasonableness of EPA's interpretation. It's not the definitive factor. It's a factor that's relevant to the reasonableness of EPA's interpretation. As to these enforcement actions you're talking, you said the five-year statute of limitations wouldn't apply. That would apply to forfeiture actions and things like that. You said the five-year statute of limitations would not apply to an enforcement action for injunctive relief. Your Honor, I see my time. I wanted to preserve some time for... Well, we're doing the best we can. You need to answer his question. I do have to answer your question. So, Your Honor, my reading in this circuit is that the statute of limitations has passed because commencement was the beginning of the statute of limitations. So a citizen's enforcement suit could not be brought. But an EPA enforcement suit could be. I believe that in this circuit, yes, that the agency still could bring inappropriate circumstances. Are there circuits where even an enforcement action by the EPA would be precluded by the five-year statute? I think it's somewhat mixed, Your Honor, across the circuits. So in those other circuits, enforcement action is not allowed five years after the permit. And so ultimately, Your Honor, I don't know if that's the law, but if there is a circuit where there is no enforcement left, what's the recourse? If there is something horrible happening out in the field, the available recourse is for Sierra Club to go and petition the state to modify its SIP to impose additional requirements on Pacific Corp. Are there Utah statutes or regulations indicating they can come back in 20 years later? It's my understanding, Your Honor, that under state law, you can always petition the state for regulation change. And their SIP is a part of that process. So they can petition the state to modify their SIP to say, look, we think that you need to impose additional requirements on the source because there was a mistake that we believe was made. But Title V is not the mechanism to second guess that. Didn't the Third Circuit, I think the Eighth Circuit and possibly the Ninth Circuit, say you cannot do an enforcement action if you have not taken the opportunity to challenge the major, minor, or that type of a matter in a Title V proceeding? Right. Your Honor, there is a number of cases out there that attach the bar under Section 7607B2. But those are premised on the view that Title V is a mechanism by which you can challenge the substance of an old Title I permit. And those cases would not attach and would not apply when given EPA's interpretation, Your Honor. But these are circuits who are saying what you're telling us we can't do here. And that is, these circuits are saying you can't do an enforcement action if you did not try to unwind a minor source determination. The premise of the reasoning of those cases is applying the bar under 7607B2. And that bar depends upon the availability in a Title V permit review process to go back and second guess a Title I. And EPA's interpretation, which we believe is reasonable and should be upheld, is that no, you can't in this circumstance go back and revisit Title I permit decisions. So it is contrary to those circuits? No. No, Your Honor, because those cases were assuming, assuming generally, but without resolving that Title V could allow for second guessing of old Title I permits. I understand. I'm sorry, Your Honor, my time is up. And I'd assume that all counsel know that when you divide your time, you do that at your own risk. I mean, this is a difficult case and we've got a lot of questions. Notwithstanding that, I am going to give you an extra minute. Thank you, Your Honor. You're welcome. And I'm going to give the appellant, how much time over do they go? All right. I'm not going to give you five minutes, but I'm going to give you a three and a half. Real quickly, to answer your question about permit shields, because there was some misinformation presented up here. Page 110 of the joint appendices will show You are? I'm sorry, Blaine Rawson. My minute was going so fast. Blaine Rawson, attorney. Pacificor, intervener. Permit shield is found on page 110 of the joint appendices for the Title V permit. There is a permit shield in that permit. Also, I need to clarify that under Utah law and many other air quality regulations, permit shields are a matter of regulation. They're not always included in the permits. They're often just part of the regulations that are automatically attached. Second thing that I think is important for me to clarify, which Mr. Kaplan was attempting to, is the record. Page 55 of the appendices shows that Pacificor came to the state in 1997, said we had a defect in our boiler, we need to fix it. We're going to make some other changes, so we need a permit. And we need you, state, to analyze major NSR, baseline emissions, the whole kit and caboodle, which is what the state did. We're not talking about a minor source only permit here. We're talking about an extremely thorough review in 1997 of major NSR issues. That's what occurred and it's contrary to what's in the petition to object and the petitioner's brief. Where is it in the record? Is your application in the record? Yes. Page 55, your honor. So your application will verify exactly what you said? Cover letter, yes. And then secondary, page 75 of the joint appendices is the part of the 1997 permit where it shows that the major NSR issues were reviewed and resulted in 8,500. Okay. So you asked for major review. And we got it. But I thought you only got minor review. No, we got major review and we agreed to an emission limit of 8,500 tons of NOx and a whole bunch of other reductions and that takes you below the threshold for major source. You only applied a major source NSR only applies above an emissions threshold. You can take an emissions limit which lowers you below that threshold and then it doesn't apply. That's NSR review. That's exactly what occurred. There has to be monitoring for 10 years after that. Yes, there's a whole suite of things that go along with that. Those are the same arguments the petitioner raises on page 269 through 275 of the record, the appendices in their petition to object. So what we have is the same arguments raised and addressed in 1997 or issues aren't even brought up for 18 years. And we believe that there needs to be certainty. I see my time's up. Do you operate in states that have a different process on Title I than the state of Utah? That is states that do not allow public comment and or do not allow judicial review? I have not worked in those states, Your Honor. As you know, we have a fairly large footprint. But the air permitting that I've done, I've done it for 25 years. Public comment and judicial review are a big part of my practice. But there are states that do not require public comment. The parties put it in there. I'm not familiar with them, Your Honor. Right. Thank you. Thank you. Thank you, Your Honors. I'd like first like to... One second. Okay, now you can go. Thank you. I'd first like to address the idea that part one of the applicable requirement definition in the regulations is somehow I catch all. That is untrue. If you go through that whole list of things that are in, that are considered applicable requirements under that definition, the rest of them are not part of the SIP. They are different. Section 111 of the Clean Air Act. Section 112 of the Clean Air Act. It goes on. And the permit provision that's in part two of that definition, it's the same thing. That needed to be in the definition because when a state issues a permit under the SIP, a new source review, the permit is not in the implementation plan. And so if EPA had not included that provision in the regulatory definition, then for sure sources would be arguing that those permit terms don't have to be in their Title V permit because they'd say they're not in the state implementation plan. I read from your briefs that there are states that are unlike the state of Utah that either do not allow public comment, this is in Title I proceedings, or allow public comment but do not allow judicial review. That is correct. How many states? I don't know exactly how many because EPA has acknowledged it in their federal register notices over the years but never tried to do anything about it. But I work in the southeast and I can tell you that there are several states that will issue approvals like this for changes to be made without allowing for public comment. Even when the public figures it out and asks for comment, they won't allow for public comment. So if you're in a state like that, the time that you challenge it is during the Title V permitting process? Correct. If you manage to find out if, say, somebody tells you that the state is doing this without public notice, then you sometimes, depending on the state, do have the right to judicial review. I have heard from another advocate working outside of the south that they are in a state, and I can't remember exactly which one, that doesn't have judicial review. But correspondingly, in addition to Title V, under your view, you would also have the right to proceed in an enforcement action, wouldn't you? Correct. So you wouldn't be without relief, even in those states? But the key thing here is Title V created a mechanism that makes it much more accessible for people to raise their concerns. It's not a punitive issue, but you can file a petition with EPA. There's a very high burden. The petitioner only can get relief if they can demonstrate, without any other information, without EPA having to do an independent investigation, but on the four corners of that petition. If it's straightforward enough that they can show it, then they can get relief through Title V. That's what happens. So it's easier, say, under Title V than an independent enforcement action? An independent enforcement action is a big hurdle, even for the Environmental Protection Agency. They have to get the Department of Justice to take their case and litigate it for them. For what Congress observed was that that was not, on its own, achieving widespread compliance, and that's what Title V is supposed to do. Quickly, to address a few other things that came up, Pacific Corp is arguing they went through major new source review, but they did not get a major new source review permit here. They got a minor approval permit. What they're saying is that they had some analysis by the state. As far as— I think Judge Backrack was signaling you're finished. Because you're over time. Thank you, Your Honor. I appreciate it. I respectfully request that the Court vacate the challenged portion of the order and remand back to EPA for consideration of Sierra Club's demonstration on the merits. Thank you. I do want to express, on behalf of our panel,  Your briefing was, on both sides, was superb. Your advocacy today was superb. I know both sides probably feel like you didn't get enough time. We probably feel like you didn't get enough time, but we appreciate your fine advocacy. I concur.